IN THE MATTER OF THE PETITION OF AUGUST BELMONT TO VACATE AN ASSESSMENT, ETC.

*Assessment — when ordinance to "pave" will authorize change of grade — "paving" and "repaving" —meaning of.*

On October 5, 1872, a resolution, passed by three-fourths of each board of the common council of New York, was approved by the mayor, by which the commissioner of public works was directed to have the Telford MacAdam roadway pavement laid in Seventy-second street from Eighth avenue to the North river, the work to be done by day's work, or in such other manner as the com-

missioner might deem expedient.  The resolution was never published in the official city papers.  In laying the pavement the grade of the street between Eighth and Ninth avenues was lowered so as to make it to conform to the grade of the former avenue, the expenses of which, as well as that of resetting the curb and gutter stones, were included in the assessment.  No petition of the property owners asking for, or resolution of the common council in terms directing, such change of grade, was shown.  An assessment for laying curb and gutter-stones in Seventy-second street had already been confirmed and paid.

Chapter 593 of 1870, passed May 3, 1870, changing the grade of Eighth avenue, authorized the commissioner of public works to change the grade of any street intersecting Eighth avenue between Fifty-ninth street and One Hundred and Twenty-second street, so as to conform to the new grade of the avenue, within six months from the passage of the act.  The change, in this case, was made before November 2, 1870.  This application was made to vacate the assessment.

*Held*, that the act of 1870, authorized the grade of the street to be changed, and that no petition of property owners therefor, and no resolution of the common council or publication thereof was necessary; that the power thus conferred to change the grade necessarily authorized the curb and gutter stones to be reset. That the resolution of the common council directing the pavement of a street, the carriage way of which had never been paved, impliedly required and authorized the commissioner to reduce the street to the grade established by law, and to reset the curb and gutter stones already placed thereon.

That, as the resolution in question provided for the laying of a MacAdam pavement upon a street which had never been paved upon its carriageway in any form before, and as this owing to the change of grade by the legislature, could not be properly done without resetting the curb and gutters, this assessment was therefore, not within the exception as to repaving streets contained in chapter 313 of 1874, and the failure to give notice did not invalidate the assessment.

That the assessment should be confirmed.

*Semble*, that the resetting of curb and gutter-stones is included in the term "paving" and "repaving" as used in chapter 580 of 1872, and chapter 313 of 1874.  (Per Daniels, J.; Davis, P. J., *contra*.) *

Appeal by the mayor, etc., of the city of New York from an order vacating an assessment made upon the petitioner's property, for grading and paving Seventy-second street, in the city of New York, and taking up and resetting the curbing and guttering between Eighth avenue and the Hudson river.

The assessment in question was authorized by a resolution of the common council of the city of New York, adopted by a vote of

* See ante, pp. 478, 490.

three-fourths of all the members elected to each board, and was approved October 5, 1872, which resolution was as follows :

*Resolved,* That the commissioner of public works be, and he is hereby authorized, to have the Telford MacAdam roadway pavement laid in Seventy-second street, from the east side of Eighth avenue to the North river, in accordance with the specifications for said pavement by which the Boulevard and other avenues are so paved, the work to be done by day's work, or in such manner as the commissioner of public works may deem expedient and for the best interest of the city and the property owners, the curb and gutter, where necessary, to be set or reset under the direction of the commissioner of public works, and that the accompanying ordinance therefor be adopted.

Adopted by board of aldermen, September 9, 1872 ; adopted by board of assistant aldermen, October 3, 1872 ; three-fourths of all the members elected to each board voting in favor thereof.

Approved by the mayor, October 5, 1872.

F. J. TWOMEY,
*Clerk of Common Council.*

This resolution was not, as required by the city charter (chapter 137, of 1870), published in the newspapers selected under section 1, chapter 574 of the Laws of 1871. By chapter 313 of 1874, it is provided that no assessment for local improvements shall be set aside for irregularity or technical defect except in cases of fraud and of repaving streets, upon property upon which an assessment has once been paid for paving the said street. By chapter 593 of 1870, passed May 3, 1870, the grade of Eighth avenue had been changed, and the commissioner of public works was thereby authorized to change the grade of any street intersecting Eighth avenue between Fifty-ninth street and One Hundred and Twenty-second street so as to conform to the new grade of the avenue, within six months from the passage of the act. The work for which this assessment was laid, which included the change of grade in Seventy-second street, was done on November 2, 1870. An assessment for laying curb and gutter-stones in Seventy-second street had already, before this time, been confirmed and paid. It was necessary, however, in this case, owing to the change of grade, to reset the curb

and gutter-stones, and the expense thereof, as well as of the change of grade was included in this assessment.

No consent of property owners asking for this change of grade was filed under section 5, chapter 697 of 1867, nor did the resolution of the common council in terms direct such change of grade.

*J. A. Beall*, for the mayor, etc., appellant. The excavation done was required for the purpose of laying the pavement, and the commissioner had ample authority under the resolution and ordinance, to do such work as was necessary to be done in order to accomplish that end. (2 Dillon on Corporations, 736; *Schenley* v. *The Commonwealth*, 36 Penn. St., 60; *McNamara* v. *Estes*, 22 Iowa, 246; *State* v. *Council of Elizabeth*, 1 Vroom, 365; *Williams* v. *The Mayor*, 2 Mich., 560.)

*P. A. Hargous*, for petitioner, respondent. The assessment is within the exception of section 7, chapter 580, Laws of 1872, and chapter 313, Laws 1874, as there is included an assessment for recurbing and reguttering said street on the lots of the petitioner. A recurbing and reguttering is a repavement. (*Re Phillips*, 60 N. Y., 16; *Re Keteltas*, 62 id., 624; *Re Burke*, id., 224; *Re Astor*, 53 N. Y., 617.)

Daniels, J.:

The work for the expenses of which the assessment was made, was authorized by a resolution of the common council, adopted by a vote of three-fourths of all the members elected to each board.

It was approved on the 5th of October, 1872, and authorized the commissioner of public works to have the Telford MacAdam roadway, laid from the east side of Eighth avenue to the North river, in accordance with specifications for such pavement by which the Boulevard and other avenues were paved, and it directed the work to be done by the day. There was no illegality in this direction inasmuch as the ordinance, or resolution, authorizing it was adopted by the three-fourths vote given for it in each board of the common council. (Vol. 1, Laws of 1870, 391, chap. 137, § 104.)

It was shown that the resolution had not been published in the newspaper selected for such purposes under the authority and

requirement of section 1, chapter 574 of the Laws of 1871. And for that reason it has been urged that it conferred no legal authority for making the improvement, because the curbing and guttering had been previously set upon the street, and the expenses of that work assessed upon and paid for by the owner of the property now affected. The evidence given in support of the application, resulting in the making of the order appealed from, established those facts, and also showed that the curbing and guttering had been reset in constructing the pavement provided for, and the expenses of that work included in the assessment which was the subject of complaint. *In the Matter of Burmeister* (16 N. Y. Sup. Court Repts., 613) the point was considered whether the work of curbing and guttering constituted a portion of the pavement in such a sense as to entitle the owner of property assessed for the expenses of doing it a second time, to relief under chapters 312 and 313, of the Laws of 1874. A very decided intimation was given that it was not, but as the point was not essential to the disposition of the appeal in that case, it was not decided.

In particularizing the different descriptions of pavements, a distinction will be clearly indicated between a pavement of the carriageway, and the curbing and guttering of a street, and the flagging of the walks used only by pedestrians. But the act under which this application was made, attempted to give no such definition or distinction. It used the term in its broadest and most comprehensive sense and allowed the assessment for repaving any street, or public place, to be vacated for the want of publication of the resolutions or ordinance, as that had been required by law. In that sense it seems to include every species and description of pavement, appropriate for any part of the streets and public places of the city. And the term was so defined by the Court of Appeals in the case of *Phillips* (60 N. Y., 16). The propriety of that decision was questioned upon the occasion already referred to, but it was reaffirmed in the case of *Burke* (62 N. Y., 224, 229), and the point considered to have been settled by the preceding determination; to the same effect see, also, *Williams* v. *Mayor, etc.* (2 Mich., 500). And that certainly should be accepted as controlling in the disposition of this case, if it were strictly essential to its determination. For even if the work of resetting the flagging.

curbing and guttering is to be done at the expense of the land owner, it must be as important for the protection of his interests, that he should have the statutory notice of the contemplated improvement, and in that way afforded an opportunity of showing it to be unrequired, as it is that the notice should be given of an ordinance or resolution for repairing the carriageway of a street. The policy which would entitle him to notice of the latter would clearly include also the former. But as this case will not depend upon that point, it need not on the present occasion be decided.

In making the improvement in controversy, an excavation was made mostly between Eighth and Ninth avenues, by which the grade of Seventy-second street was reduced below the line at which it had been in the first instance established and graded. And as that reduction was neither asked for by the application of the owners of two-thirds of the lineal feet of land fronting upon the street, as a preceding statute had required (vol. 2, Laws of 1867, p. 1751, chap. 607, § 5); nor in terms provided for by the resolution, or ordinance authorizing the pavement; for those reasons, also, it was insisted that the assessment was unlawful because it included the expenses of making that change of grade. But for the purpose of changing the grade of this street, as it had been at first established, no such application of the property owners was necessary. The change was required because of a reduction of two feet in the grade of Eighth avenue at the point where it intersected Seventy second street. And it was expressly authorized by chapter 593 of the Laws of 1870, in order to conform the grade of this street to that of the avenue. All that was required for that purpose was, that the commissioner of public works should make the change within six months after the passage of the act. That took place on the 3d of May, 1870, and the change was shown to have been made by him on the second of the following November, which was within the time the legislature had prescribed. The proceedings taken in laying down the pavement were not for those reasons subject to the imputation that they effected any unlawful or unwarranted change in the grade of Seventy-second street.

This work was authorized after the change made in the grade had been fully provided for, and it must, therefore, have been intended, although not in terms expressed, that in performing it

the lawful grade of the street should be followed. The resolution required the MacAdam pavement to be laid, and a reasonable understanding and construction of that authority would include whatever should prove necessary to accomplish that result. And the excavation made was clearly one of those acts. Without it the pavement could not be laid, and it must have been intended it should be upon the legally established grade of the street. And though that was not expressly directed by the resolution or ordinance, it was clearly to be inferred for the end provided for could be obtained in no other way. (2 Dillon on Municipal Corporations, 736, § 636; *Schenley* v. *Com.*, 36 Penn., 29, 60; *Allegheny City* v. *Blair*, 74 id., 225, 230; *State* v. *Council of Elizabeth*, 1 Vroom, 365; *Williams* v. *Mayor of Detroit*, 2 Mich., 560.)

It is clear that the taking up and resetting of the curbing and guttering were also necessary for the purpose of effecting this change in the grade. It could not be accomplished without that. And, consequently, the power to do it was conferred by the statute allowing the grade of the street to be conformed to that of the avenue. Against that the owner could present no valid or reliable objection. The specific thing which included it was provided for by the express terms of the law. No ordinance or resolution of the common council was, for that reason, required to provide for the change. But as its necessity had been created by the change in the grade of the avenue, an absolute right to make that of the street correspond with it, was given unqualifiedly by the statute to the commissioner of public works. As to that no publication was necessary, for the act including it prescribed all that should be done for that purpose, and that excluded the obligation to make any publication of notice whatsoever.

What the ordinance or resolution providing for the work directed, was the laying of a MacAdam pavement upon a street which had never been paved upon its carriageway in any form before. And as that was the original pavement on that portion of it, and it could not be properly laid without reducing and resetting the curbing and guttering, the failure to publish the ordinance or resolution, did not justify the order vacating the assessment which was made for the expenses. (Laws of 1874, chapter 313.) Neither the failure to give the notice, according to

the terms of that act, nor the resetting of the curbing and gutter-
ing, which was necessarily included in the power created by
the statute of 1870, to change the grade, rendered the assessment
invalid.

For these reasons, and also for the additional one that the work
had been completed, and the liability to pay the expense of it
created before 1875, chapter 476 of the Laws of that year, can
have no application whatever to this case.

The order appealed from should be reversed with ten dollars
costs, besides the disbursements on the appeal, and an order entered
denying the application.

Davis, P. J.:

I agree to the result in this case upon the ground on which it is
put by my brother Daniels, but I dissent from what is said by him
indicating that curbing and guttering a street, is either in fact or
in law, a paving of the street itself. Technically, it is no part of
the "paving," but it is something which has its own distinctive
name and use; and it is often, and, indeed, in new streets in the city
almost always done wholly independently of the paving, and long
before the street itself is required to be paved. There is no author-
ity either in the ordinances of the city, or in usage, or in any of the
decisions, recognizing the idea that the mere fact that a street was
years ago curbed and guttered at the expense of the owners of the
adjoining lands, relieves them from the expense of *paving* the
same whenever that is adjudged necessary. It is only when a
street has once been completely paved, and paid for by the owners,
*that the future burden of repaving* is thrown upon the city.

And the word "repaving" or repavement as used in the acts of
1872 (chap. 580), and 1874 (chap. 313), relate only to a street which
has once been completely paved. *In the Matter of Burmeister*
(9 Hun, 613) I took occasion to refer to various ordinances regulat-
ing this subject and showing the established distinction between
the "curbing and guttering" of a street, and its pavement.

To say that a street is *paved* when it is simply curbed and gut-
tered, seems to me to be an abuse of terms; and even if curbing
and guttering be part of the pavement, to say that completing the
pavement by paving the carriageway, which is all of the street

lying between gutters, is a "*repavement,*" where no paving of the carriageway had ever been made at all, is to make the less include the greater in a manner inconsistent with law, and the general understanding of men.

BRADY, J., also concurred in the result.

Order reversed, with ten dollars costs and disbursements. Order to be entered denying application.